UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIR HOUSING JUSTICE CENTER, INC.; BIANCA JONES; JUSTIN CARTER; and MICHAEL JAMES,<br><br>                 Plaintiffs,<br><br>     v.<br><br>NEW PROPERTY ASSOCIATES, LLC; and DIKSON DUMITRESCU,<br><br>                 Defendants. | Civ._____<br><br>**COMPLAINT** |

Plaintiffs Fair Housing Justice Center, Inc. ("FHJC"); Bianca Jones; Justin Carter; and Michael James (collectively, "Plaintiffs"), by and through their attorneys, Emery Celli Brinckerhoff & Abady LLP, for their Complaint allege as follows:

## INTRODUCTION

1.　　Fifty years after passage of the federal Fair Housing Act prohibiting housing discrimination based on race, the Fair Housing Justice Center found that unequal treatment against African Americans continues unabated at a suburban Westchester County apartment building, located in a census tract that is less than 3% African American.

2.　　When FHJC sent white testers to the 53-unit Eastchester rental building earlier this year to inquire about apartments for rent, they were told about and shown apartments by the building superintendent; offered rental applications; provided a cell phone number to call the super back; and encouraged to return a completed application directly to the super.

3.　　In stark contrast, when the individual Plaintiffs, who are African American, visited the same building shortly before or after the white testers, they were told by

the same building superintendent about and shown fewer apartments for rent, told there was a waiting list for the building, told they had to call a broker to obtain an application, and/or not given the building super's phone number or encouraged to return to the building if interested in applying.  In one instance, the building super tried to discourage one of the Plaintiffs from inquiring further by telling her the two vacant apartments he had were both under contract, when in fact there were no such pending contracts.

4.     Plaintiffs seek to end Defendants' discriminatory housing practices and remove the illegal barriers preventing New Yorkers from renting Defendants' apartments.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 28 U.S.C. § 2201, and 42 U.S.C. § 3613.  This Court has supplemental jurisdiction over the New York State law claim pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendants conduct business and reside in the District.

## THE PARTIES

7.     FHJC is a non-profit New York City-based organization dedicated to ensuring that all people have equal access to housing opportunities in the New York City region[1] by eliminating housing discrimination and creating open, accessible, and inclusive communities. FHJC expended staff time and other resources to identify, investigate, and respond to the Defendants' discriminatory rental practices.   FHJC's investigation diverted resources away from other FHJC activities.  Furthermore, Defendants' discriminatory rental practices frustrated FHJC's mission to ensure that all people have equal access to housing opportunities in the New

---

[1]     FHJC serves the New York counties of Westchester, Dutchess, Orange, Putnam, Rockland, Nassau, and Suffolk, as well as the five boroughs of New York City.

2

York City region by, among other things, making apartments for rent unavailable to African Americans because of race and color.

8.     Bianca Jones is an African American woman who resides in the District in New York, New York and during all relevant times was employed as a tester by FHJC.  On February 28, 2018, Ms. Jones met with Defendant Dikson Dumitrescu at 9 New Street, Eastchester, New York, to inquire about the availability of apartments for rent.

9.     Justin Carter is an African American man who resides in the District in New York, New York and during all relevant times was employed as a tester by FHJC.  On March 15, 2018, Mr. Carter met with Defendant Dikson Dumitrescu at 9 New Street, Eastchester, New York to inquire about the availability of apartments for rent.

10.     Michael James is an African American man who resides in the District in the Bronx, New York and during all relevant times was employed as a tester by FHJC.  On April 10, 2018, Mr. James met with Defendant Dikson Dumitrescu at 9 New Street, Eastchester, New York, to inquire about the availability of apartments for rent.

11.     Defendant New Property Associates, LLC ("New Property") is a New York corporation with its principal place of business in the District at 141 East Sidney Avenue, Mt. Vernon, New York.  New Property is the owner of a 53-unit multi-family rental building in Westchester County at 9 New Street, Eastchester, New York during all times relevant to this complaint.  Upon information and belief, Cesare DeFeo is a principal owner of Defendant New Property and has an ownership interest in hundreds of rental units in Westchester County and on Long Island, including 9 New Street and 485 White Plains Road, Eastchester, NY.

12.     Defendant Dikson Dumitrescu is a white man who resides in the District. Mr. Dumitrescu works as the building superintendent for Defendant New Property at 9 New

3

Street, Eastchester, New York.  Upon information and belief, he is also the building
superintendent at a 40-unit rental building located nearby at 485 White Plains Road, Eastchester,
New York and owned by Cesare DeFeo.  Defendant Dumitrescu is an employee and/or agent of
Defendant New Property.  During all times relevant to this complaint, Defendant Dumitrescu had
the authority, on behalf of Defendant New Property, to show apartments, provide information
about the availability of apartments for rent, hand out and receive rental applications, and
provide information about the rental process for 9 New Street, Eastchester, New York.

## FACTUAL ALLEGATIONS

13.     The suburban Town of Eastchester is a predominantly white community
located in Westchester County, New York with a population that is more than 85% White Non-
Hispanic.  According to the 2010 Census, the Census Tract in which both Eastchester rental
buildings described above are located had an African American population of less than 3%.  At
the same time, the surrounding communities of Yonkers, Mt. Vernon, and New Rochelle all had
populations that were roughly 20% or more African American.  Westchester County had a
population that was approximately 15% African American as of 2010.

**Fair Housing Justice Center, Inc.**

14.     Among other activities, FHJC (a) provides information to the public and
other nonprofit organizations in the New York City regional area about fair housing laws, (b)
provides intake counseling to individuals and organizations alleging  housing discrimination, (c)
conducts testing and other investigations of alleged housing discrimination, (d) makes legal
referrals to cooperating attorneys, (e) assists with the preparation and filing of administrative
housing discrimination complaints, and (f) provides post-referral litigation support services.
FHJC provides these services free of charge and without regard to income.

4

15.     FHJC also conducts testing investigations for government law enforcement agencies, provides technical assistance to nonprofit organizations engaging in fair housing enforcement activities, and engages in policy initiatives that further FHJC's mission. These initiatives include the publication and dissemination of reports and educational materials, the production of videos and toolkits, and the implementation of an interfaith initiative called "Building the Beloved Community."

16.     FHJC employs individuals as "testers": persons who pose as renters or homebuyers for the purpose of obtaining information about the conduct of landlords, real estate companies, agents, and others to determine whether illegal housing discrimination is taking place.

17.     During all times relevant to this Complaint, Plaintiffs Justin Carter, Bianca Jones, and Michael James were employed as testers by FHJC.  Prior to conducting the tests described below, they received training from FHJC, which included instructions on conducting tests, preparing tester report forms, and using concealed digital audio recorders during tests.

18.     FHJC, through three of its African-American employees, was provided untruthful information by Defendants about apartments available for inspection or rent based on race or color in violation of state and federal fair housing laws.

**Racial Discrimination by Defendants – February 2018**

19.     FHJC sent a white male tester to 9 New Street on February 27, 2018.  As he approached the building, the white tester approached a man he saw outside the building to ask about apartments for rent.  The man gave the tester the cell phone number for Defendant Dumitrescu.  While standing at the lobby entrance, the white tester telephoned Mr. Dumitrescu and asked if he had any apartments for rent.  Mr. Dumitrescu said he had one one-bedroom

apartment for rent.  The tester than explained that he was at the entrance of the building and asked if it would be possible to see the apartment.  Mr. Dumitrescu directed the tester to come up to the fourth floor.

20.     The white male tester met with Defendant Dumitrescu on the fourth floor and was shown Apartment 4E, a one-bedroom apartment.  Mr. Dumitrescu told the tester the apartment was available for rent immediately.

21.     When the white tester asked who he should call if he was interested in the apartment, Defendant Dumitrescu said he would give the tester an application.  Mr. Dumitrescu then proceeded to give the tester an application form and explained that the tester should give the completed application back to Mr. Dimitrescu and he would forward it to the management office. Mr. Dumitrescu offered to call the building manager that day to tell him about the white tester.

22.     Defendant Dumitrescu did not tell the white tester that he had any contracts pending on Apartment 4E or that there was a waiting list for apartments to rent at 9 New Street.  Mr. Dumitrescu also did not tell the white tester that he should call a real estate broker or anyone named Anthony.

23.     The next day, on February 28, 2018, Plaintiff Bianca Jones went to 9 New Street to inquire about the availability of an apartment for rent.  Ms. Jones met with Defendant Dumitrescu who told her that he had had two apartments available for rent but they were "under contract."  When Ms. Jones asked Defendant Dumitrescu if the contracts had "gone through" he told her they had not.  She then asked him if she could see the apartments and he agreed to show her one apartment, stating that the other was having work done on it.

24.     Defendant Dumitrescu proceeded to showed Ms. Jones Apt. 4E, a one-bedroom apartment that was not under construction.

6

25.     While showing her Apt. 4E, Defendant Dumitrescu gave Ms. Jones the telephone number for a real estate agent named Anthony and told her to call Anthony and give him the address of the building, 9 New Street, to inquire further about apartments for rent.  Mr. Dumitrescu also said Anthony had other rental buildings in Yonkers and Mt. Vernon, two cities with a substantially higher African American population than Eastchester.  Mr. Dumistrescu did not give Ms. Jones his own phone number.

26.     Defendant Dumitrescu did not offer Ms. Jones a rental application as he had for the white tester who he met with the day before.  Instead, when Ms. Jones asked if he had an application, Mr. Dumitrescu told Ms. Jones that he did not have one and that she should call Anthony to obtain one.

27.     After Mr. Dumistrescu told Ms. Jones to call Anthony for an application, Ms. Jones asked if she could "take a peek" at Apt. 4C, the apartment under construction. Defendant Dumitrescu relented and showed her the apartment.

28.     After showing her Apt. 4C, Mr. Dumistrescu told Ms. Jones that there was a waiting list at the office for apartments at 9 New Street and that Anthony could give her "more options."

29.     The next day, on March 1, 2018, the same white male tester called Mr. Dumistrescu and asked if the apartment he had been shown (Apt. 4E) was still available to rent. Mr. Dumistrescu confirmed that it was and discussed the rent amount and price for a parking space.  Mr. Dumistrescu said he would have more information on the rent the following week and told the white tester he would talk with the landlord about including the cost of a parking space into the rent amount for Apt. 4E.  The tester asked if other people had been looking at the apartment and Mr. Dumistrescu told him that he had shown the apartment to two people but had

not given out any applications.  During the call, Mr. Dumitrescu did not tell the white tester to call Anthony, but instead told him to call Mr. Dumitrescu back directly for information about the rent and to schedule a time to show the tester's wife the apartment.

**Racial Discrimination by Defendants – March 2018**

30.    FHJC sent a white female tester to 9 New Street on March 14, 2018 to inquire about apartments for rent.  The tester met with Defendant Dumitrescu who told the tester that he had two one-bedroom apartments available for rent.  Mr. Dumitrescu told the white tester that Apt. 4E was available immediately and that Apt. 4C would be available by mid-April when renovations to the bathroom and kitchen would be completed.  Mr. Dumitrescu showed the white tester both apartments: 4E and 4C.

31.    Defendant Dumitrescu offered to give the white tester an application, even though she had not asked for one, and told her to bring the completed application back to him directly.  Mr. Dimitrescu also gave the white tester his cell phone number to call if she wanted to come back again to see the apartments.

32.    During the visit, Defendant Dumitrescu gave the white tester a "tip" to try negotiating the parking space with the management office as part of the rent.

33.    The next day on March 15, 2018, Plaintiff Justin Carter went to 9 New Street to inquire about apartments for rent.  When Mr. Carter arrived at the building, he met a man who called Defendant Dumitrescu on his cell phone and told Mr. Dumitrescu that someone was in the lobby asking about apartments for rent.  When he ended the call, the man told Mr. Carter to go up to the fourth floor and look for Defendant Dumitrescu who was working in Apt. 4C.

8

34.     Mr. Carter proceeded up to the fourth floor and found Mr. Dumitrescu in Apt. 4C which was being renovated.  When Mr. Carter asked Mr. Dumitrescu if he had any apartments available, Mr. Dumitrescu said he had one apartment, the apartment he was working in at the time, and that it would be ready mid-April.  Mr. Dumitrescu then showed Mr. Carter the apartment, Apt. 4C, but did not show him or mention that Apt. 4E was available to rent immediately.

35.     After showing him Apt. 4C, Defendant Dumitrescu told Mr. Carter to call Anthony, the same real estate agent that he told Plaintiff Jones to call, and to tell Anthony he had been to 9 New Street and seen Apt. 4C.  Mr. Dumitrescu encouraged Mr. Carter to ask Anthony if he had any other apartments available for rent.

36.     When Mr. Carter asked what he should do "to move forward," Mr. Dumitrescu said he should call Anthony and that Anthony would send Mr. Carter an application. Mr. Dumitrescu also told Mr. Carter that when he sent the completed application to Anthony, then he would probably meet Anthony in person.  In contrast, Mr. Dumitrescu did not tell the white female tester to call Anthony or that she would have to meet with anyone other than Mr. Dumitrescu.

37.     On March 16 and 19, 2018, the same white female tester telephoned Mr. Dumitrescu to inquire about rent amounts for the two apartments he showed her.  Each time they spoke, Mr. Dumitrescu offered to call his "boss" to obtain the information for the tester and did not refer her to Anthony.

38.     On March 23, 2018, FHJC sent a white male tester posing as the husband of the white female tester who had met with Defendant Dumitrescu on March 14, 2018.  Mr.

Dumitrescu showed the white male tester both Apt. 4E and 4C.  Mr. Dumitrescu said that Apt. 4E was "ready to go" and Apt. 4C would be available by April 15th.

39.     Defendant Dumitrescu did not advise the white male tester to call Anthony as he had done for both Plaintiffs Jones and Carter.  Instead, he encouraged the white male tester to continue to communicate with him directly if the tester was interested in submitting an application since a real estate agent was going "to come into the picture" the following week and would charge a broker's fee of a month's rent.

40.     When the white tester asked how soon it would be before Defendant Dumitrescu would know the specific rent amounts for the two apartments, Mr. Dumitrescu called the management office directly for the tester to inquire about the monthly rent.  He told the person who answered the phone that he had someone who was very interested in renting an apartment and that they were "really good people" even though he had not previously met the white male tester.  After speaking with someone named "Carlos" at the office, Mr. Dumitrescu told the tester that he would call the office again after his boss was back from lunch and then call the tester's wife to give her the specific rent amounts for the two apartments.

41.     On March 28, 2018, Defendant Dumitrescu, called the white female tester's cell phone number and left a message with the rent amount for each apartment, along with the price for an outdoor and indoor parking space.

**Racial Discrimination by Defendants – April 2018**

42.     On April 10, 2018, Plaintiff Michael James went to 9 New Street to inquire about apartments for rent.

43.     Defendant Dumitrescu showed Mr. James Apt. 4E but did not tell him about or show him Apt. 4C.  Mr. Dumitrescu told Mr. James that Apt. 4E was available to rent

immediately.  When Mr. James asked if Apt. 4E was the only available apartment, Defendant

Dumitrescu said it was the only one that was ready.

44.     When Mr. James asked how long it would take to process an application,

Defendant Dumitrescu said he did not have an application and then told Mr. James it could take

one to two weeks before a decision would be made on an application.

45.     As he had for the other African American Plaintiffs, Mr. Dumitrescu gave

Mr. James the telephone number for a man named Anthony and advised Mr. James to call

Anthony to obtain an application.  Mr. Dumitrescu did not give his own telephone number to Mr.

James or give him an application, as he had done for the white testers.

46.     Two days later, on April 12, 2018, FHJC sent a white female tester to 9

New Street to inquire about apartments for rent.  The white tester met with Defendant

Dumitrescu who told her that three one-bedroom apartments were available to rent:  Apt. 4E, 4C,

and 3F.  He showed the tester all three vacant apartments.

47.     Defendant Dumitrescu told the white tester that Apt. 4E and 3F were

available immediately to rent.  He said that Apt. 4C would be ready by the last week in April and

that he was just waiting for new appliances to be installed in the newly renovated apartment.

48.     Before showing her the apartments, Defendant Dumitrescu, offered to give

the white tester an application form even though she had not requested one.  While Mr.

Dumitrescu encouraged the white tester to call a real estate agent named Anthony for more

details on the amount of rent for each apartment, he told her that she could return her completed

application to him directly, or to Anthony.  During the white tester's visit, Mr. Dumitrescu tried

to call Anthony to let him know about the white tester.  Mr. Dumitrescu did not call Anthony

when Plaintiffs James met with him two days earlier and did not tell Mr. James he could bring a

completed application back to Mr. Dumitrescu directly.

49.     While she was at 9 New Street, Defendant Dumitrescu asked the white

tester for her phone number which he entered into his cell phone.  He then immediately called

the tester's cell phone number so she would have his cell number in her phone to call him.  Mr.

Dumitrescu did not do this for Plaintiff Michael James two days earlier and did not tell Mr.

James about or show him Apt. 4C or 3F.

## INJURY TO PLAINTIFFS

50.     As a result of the illegal and discriminatory actions described above,

Defendants have directly and substantially injured FHJC by frustrating its mission of creating

communities free of segregation and unequal housing opportunities for African Americans.

51.     Defendants' discriminatory conduct perpetuates residential segregation in

Eastchester, New York and frustrates FHJC's mission by preventing African Americans from

living in buildings owned and/or managed by the Defendants.

52.     FHJC has also been injured by diverting scarce resources to identify and

counteract Defendants' unlawful housing practices.  Those resources could have been used to

provide services and to conduct educational activities, research, and policy advocacy instead of

countering Defendants' discriminatory conduct.

53.     Until these violations are remedied, Defendants' illegal and discriminatory

actions will continue to injure FHJC by, *inter alia*,

a.     interfering with efforts and programs intended to bring about

equality of opportunity in housing;

b.    requiring the commitment of scarce resources, including

significant staff time and funding to investigate and counter the

Defendants' illegal conduct, thus diverting those resources from

other activities, such as education, outreach, counseling, and policy

advocacy; and

c.    frustrating organizational mission and goals of promoting the equal

availability of housing to all persons without regard to race or

color.

54.    By reason of the foregoing, Plaintiffs Bianca Jones, Justin Carter, and

Michael James have suffered a loss of civil rights and other damages, including emotional

distress, humiliation, and embarrassment.

### FIRST CAUSE OF ACTION
Fair Housing Act – § 3604(d)

55.    Plaintiffs FHJC, Jones, Carter, and James repeat and reallege the

foregoing paragraphs of their Complaint as though fully set forth herein.

56.    The residential apartments contained within the building located at 9 New

Street, Eastchester, New York are "dwellings" as defined by the Fair Housing Act to include

"any building, structure, or portion thereof which is occupied as, or designed or intended for

occupancy as, a residence by one or more families." 42 U.S.C. § 3602(b).

57.    As described above, the conduct of Defendants New Property Associates,

LLC and Dikson Dumitrescu, individually or through their employee and/or agent, constitutes

representations made because of race or color that a dwelling is not available for inspection or

rent when such dwelling was in fact so available, in violation of the Fair Housing Act, 42 U.S.C.

§ 3604(d). This provision includes "limiting information, by word or conduct, regarding suitably

priced dwellings available for inspection, sale or rental" because of race or color.  28 C.F.R. Part 100.80(b)(4).

58.     Defendants' conduct, as described above, was intentional, willful, and made in disregard for the rights of others.

59.     Plaintiffs FHJC, Jones, Carter, and James are "aggrieved persons" as defined by the Fair Housing Act because they have been injured by Defendants' discriminatory housing practices.  42 U.S.C. § 3602(i).

60.     Pursuant to 42 U.S.C. § 3613(c), Plaintiffs FHJC, Jones, Carter, and James are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
Fair Housing Act – § 3604(b)

61.     Plaintiffs repeat and reallege the foregoing paragraphs of their Complaint as though fully set forth herein.

62.     The residential apartments contained within the building located at 9 New Street, Eastchester, New York are "dwellings" as defined by the Fair Housing Act to include "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families."  42 U.S.C. § 3602(b).

63.     As described above, the conduct of Defendants New Property Associates, LLC and Dikson Dumitrescu, individually or through their employee and/or agent, constitutes discrimination against a person in the terms or conditions of rental of a dwelling because of race or color in violation of the Fair Housing Act, 42 U.S.C. § 3604(b).

64.     Defendants' conduct, as described above, was intentional, willful, and made in disregard for the rights of others.

14

65.     Plaintiffs FHJC, Jones, Carter, and James are "aggrieved persons" as defined by the Fair Housing Act because they have been injured by Defendants' discriminatory housing practices.  42 U.S.C. § 3602(i).

66.     Pursuant to 42 U.S.C. § 3613(c), Plaintiffs FHJC, Jones, Carter, and James are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
New York Civil Rights Law - § 40-c

67.     Plaintiffs repeat and reallege the foregoing paragraphs of their Complaint as though fully set forth herein.

68.     New York Civil Rights law § 40-c (2) provides in relevant part that: "No person shall, because of race, creed, color [or] national origin…be subjected to any discrimination in his or her civil rights…by any other person or by any firm, corporation or institution."

69.     By engaging in the discriminatory conduct set forth above, Defendants violated New York City Law § 40-c.

70.     Defendants' conduct, as described above, was intentional, willful, and made in disregard for the rights of others.

71.     Plaintiffs FHJC, Jones, Carter, and James have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

72.     Pursuant to New York Civil Rights Law § 40-c, Plaintiffs are entitled to statutory damages, injunctive relief, and attorneys' fees and costs.

73.     At or before the commencement of this action, Plaintiffs will have provided notice of this action to the Attorney General of the State of New York per New York Civil Rights Law § 40-d.

74.     Pursuant to 42 U.S.C. § 3613(c), Plaintiffs FHJC, Jones, Carter, and James are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and cost

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

(a)     Declaring that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*;

(b)     Enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation from:

    (i)     discriminating against a person in the terms or conditions of rental of a dwelling because of race or color;

    (ii)     representing to any person that a dwelling is not available for inspection or rental when such dwelling is in fact so available, or will become available in the future, because of race or color; and

    (iii)     coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act.

(c)     Enjoining Defendants and their agents, employees, and successors, and all other persons in active concert or participation to:

(i)     make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

(ii)    train all owners, agents, and employees on fair housing laws;

(iii)   advertise apartments available for rent in a non-discriminatory manner, including displaying an Equal Housing Opportunity logo (or statement to that effect) on all print and internet advertisements and displaying in all offices and rental buildings appropriate fair housing law posters;

(iv)    allow monitoring of their application and rental process;

(v)     retain advertising and rental records to allow for appropriate monitoring;

(vi)    develop written procedures on rental process and fair housing policy to be distributed to all employees, agents, tenants, and rental applicants; and

(vii)   establish a system for testing agents and employees for unlawful discriminatory practices;

(d)     Awarding such damages to Plaintiff FHJC as will fully compensate for the diversion of resources and frustration of mission caused by Defendants' unlawful practices;

(e)     Awarding such damages to Plaintiffs Jones, Carter, and James as will fully compensate for any loss of rights, as well as for the humiliation, embarrassment, and emotional distress suffered due to Defendants' discriminatory conduct;

(f)     Awarding punitive damages to Plaintiffs;

(g)     Awarding Plaintiffs reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

(h)     Granting Plaintiffs such other further relief as may be just and proper.

17

Dated:  September 20, 2018
         New York, New York

EMERY CELLI BRINCKERHOFF & ABADY LLP

By: _____/s/_____
         Diane L. Houk
         600 Fifth Avenue, 10th Floor
         New York, New York 10020
         Telephone: (212) 763-5000
         Facsimile: (212) 763-5001

*Attorneys for Plaintiffs*